IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 25, 2001

## STATE OF TENNESSEE v. MICHAEL O. JOHNSON

**Direct Appeal from the Criminal Court for Davidson County**
**No. 99-B-831     Cheryl Blackburn, Judge**

_____

**No. M2000-01837-CCA-R3-CD - Filed July 9, 2001**

_____

The defendant appeals from the trial court's denial of probation or some other form of alternative sentencing. After a review of the record, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed.**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and JERRY L. SMITH, J., joined.

Theodora A. Pappas, Nashville, Tennessee, for the appellant, Michael O. Johnson.

Paul G. Summers, Attorney General and Reporter; Mark E. Davidson, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Roger Moore, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The defendant, Michael O. Johnson, pled guilty to one count of facilitation of aggravated robbery, a Class C felony, and agreed to a six-year sentence as a Range I offender with the manner of service to be determined by the trial court. At the conclusion of the sentencing hearing, the trial court ordered Defendant's sentence to be served by incarceration. In this appeal, Defendant argues that the trial court erred when it denied Defendant's request for probation or some form of alternative sentencing. Specifically, Defendant contends that the trial court incorrectly considered the statutory sentencing principles contained in Tenn. Code Ann. § 40-35-103 and that the trial court improperly required Defendant to prove that he was "deserving of probation," thereby denying him the presumption he is entitled to under Tenn. Code Ann. § 40-35-102(6). After a review of the record, we affirm the trial court's judgment.

# I. Factual Background

Defendant's conviction resulted from a robbery committed on February 16, 2000. The presence report details the following facts: Two black males, wearing masks and armed with large revolver handguns, entered the Kroger store on Gallatin Road and demanded cash from the fifteen-year-old employee who worked at the customer service desk. When the employee filled the plastic bag given him with cash, the two men took it and immediately left the store. A description of the getaway vehicle was obtained. A short time later it was spotted, and four men were apprehended as a result. Inside the vehicle, the officers discovered the money taken from the Kroger store, four handguns, and clothing which matched the descriptions of that worn by the robbers. Defendant was among the four suspects and the driver of the vehicle. Afterward, he pled guilty to facilitation of aggravated robbery.

At the sentencing hearing, Defendant testified that he had been driving around with a friend named Howard Morgan prior to the robbery on February 16, 2000. Although Defendant knew the two men who robbed the Kroger store (one was his brother), he claimed to have no knowledge that a robbery was planned. Earlier that evening, Defendant had received a telephone call from his brother and a friend asking him to meet them at an apartment complex because they needed a ride. Approximately ten to fifteen minutes later, Defendant and Morgan arrived at the specified apartment building and the two men got into the car. Defendant noticed nothing suspicious, except that his brother and the other man were walking fast and his brother was carrying a bag. Defendant saw no money, guns, or masks. Shortly thereafter, Defendant noticed a police car following them and his brother explained what they had done. Defendant claimed he was not even aware that his passengers had committed a crime until the police began to chase them. He did not attempt to escape from the police, and he was not charged with speeding or evading arrest.

Defendant claimed that he had a "bad feeling" when he met his brother after the robbery was committed and said he "should have ran with it." He further stated that, if he ever had a bad feeling again, he would "go the other way." During cross-examination, Defendant was questioned regarding his criminal history, the record of which reveals a propensity to drive while his license is revoked or suspended. Defendant responded that these offenses occurred "back when [he] was younger" and that, lately, he "had gotten better on that." Specifically, the presence report shows that Defendant was arrested for driving with a suspended or revoked license on five separate occasions in the time period between November 1992 and December 1994. These convictions began almost immediately after he was convicted for assault in October 1992, at the age of twenty. The State pointed out that Defendant's record also contained a probation violation but, for some reason, the court chose not to revoke it.

Howard Morgan, the man who was riding in the car with Defendant before the robbery, also pled guilty to facilitation of aggravated robbery. At the sentencing hearing, Morgan testified that he did not go into the Kroger store, but admitted that he did know a robbery was planned and chose not to participate. Contrary to Defendant's testimony, Morgan testified that he and Defendant had discussed the crime prior to the robbery, and then dropped the two robbers off in front of the Kroger

store.  While they waited to pick them up again, Morgan and Defendant drove around.  The two men robbed the store as planned and then got into the Defendant's car.  Several miles from the scene of the crime, the men noticed that the police were following them and tried to hide the money.  Morgan grabbed a handful and stuffed $4600 into his pocket, but the police discovered it shortly after his arrest.

During the sentencing hearing, the trial court acknowledged that Defendant was a Range I standard offender convicted of a Class C felony and, therefore, he was presumed to be a favorable candidate for alternative sentencing options in the absence of evidence to the contrary.  The trial court also stated its intent to consider "whether confinement is necessary to protect society . . . [,] to avoid depreciating the seriousness of the offense, and . . . to provide an effective deterrence to others likely to commit similar offenses, and whether or not measurements less restrictive than confinement have frequently or recently been applied unsuccessfully . . . ."  Additionally, the trial court observed that it was Defendant's responsibility to convince the court "why total probation would be important in [his] case."

Near the conclusion of the proceeding, the trial judge denied Defendant alternative sentencing based on the following findings: Defendant had prior convictions and a criminal history, he had violated his terms of probation on at least one occasion, and he had been "less than forthright with th[e] court . . . when he [told the court his] story about what happened, which absolutely makes no sense."  The trial court then remarked that "the deterrent issues with regard to this case [are] built into the record," and considered the testimony of a police officer named Fitzgerald who had stated that numerous robberies within a three-block radius of the Kroger store had recently been committed by two black males, armed with handguns, and that a vehicle was never observed.  As a result, the police officers in the vicinity had been working under a status of "heightened alert" with regard to circumstances which conformed to any aspects of this crime pattern.  The trial judge stated that the testimony of the police officer provided sufficient facts to properly deny Defendant probation on the basis of "deterrent issues" alone, then emphasized that Defendant's lack of truthfulness and prior criminal record lent additional support to the court's decision to confine Defendant.

## II. Analysis

When a defendant appeals the length, range, or manner of service of a sentence imposed by the trial court, including the grant or denial of probation, this Court conducts a de novo review of the record with a presumption that the trial court's determinations are correct.  Tenn. Code Ann. § 40-35-401(d).  The presumption of correctness is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances."  State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).  The burden of showing that the sentence is improper is upon the appealing party.  Sentencing Commission Comments, Tenn. Code Ann. § 40-35-401(d).  If the record shows that the trial court failed to consider the sentencing principles and all relevant facts and circumstances, our review of the sentence is purely de novo.  Ashby, 823 S.W.2d at 169.

Defendant does not challenge the length of his sentence; the length was controlled by the terms of his plea agreement. Instead, he challenges the manner of service of his sentence. In his brief, Defendant infers that the trial court incorrectly evaluated the facts in his case when it considered them in light of the statutory principles of sentencing. Specifically, Defendant asserts that (1) confinement is not necessary to protect society since his criminal history is not serious or extended; (2) confinement is not necessary to provide an effective deterrence to others because closely monitored probation and the threat of a long sentence is sufficient to "make other people think twice before engaging in such criminal conduct"; and (3) measures less restrictive than confinement have not frequently or recently been applied unsuccessfully to Defendant. Defendant also argues that the trial court failed to give proper consideration to the facts that, although he violated probation one time, the court did not revoke his probation, and he has acknowledged his mistake and learned a valuable lesson from this experience. As a result of these errors, Defendant maintains that he has been improperly incarcerated because "the trial court should have suspended some or all of his sentence and placed him on probation." Defendant asserts that the trial court erred when it required Defendant "to convince the court that he is deserving of probation" because this requirement improperly "shifted the burden of proof" from the State to Defendant and, thus, denied him the favorable presumption that he is entitled to under Tenn. Code Ann. § 40-35-102(6). For reasons which follow, we disagree with Defendant and find that the trial court properly denied him alternative sentencing, including probation, under the facts presented in this case.

As a Range I, standard offender convicted of a Class C felony, Defendant is correct in his assertion that he may be presumed to be a favorable candidate for alternative sentencing options in the absence of evidence to the contrary. Tenn. Code Ann. § 40-35-102(6) (1997). Determining that a defendant is entitled to the statutory presumption does not end the trial court's inquiry, however. The presumption in favor of alternative sentencing may be rebutted by evidence that (1) "confinement is necessary to protect society by restraining the defendant who has a long history of criminal conduct," (2) "confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses," or (3) "measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant." Id. § 40-35-103(1)(A)-(C); see Ashby, 823 S.W.2d at 169. In addition, a defendant's potential for rehabilitation or lack thereof should be examined when determining whether an alternative sentence is appropriate. Tenn. Code Ann. § 40-35-103(5).

As a preliminary matter, we find that the presumption of correctness applies to the trial court's determinations in this case. The record reveals that the trial court considered the relevant facts and circumstances, as well as sentencing principles, and complied with the appropriate procedures. After acknowledging that Defendant was a favorable candidate for alternative sentencing in accordance with Tenn. Code Ann. § 40-35-102(6), the court stated its intent to consider "whether confinement is necessary to protect society . . . [,] to avoid depreciating the seriousness of the offense, and . . . to provide an effective deterrence to others likely to commit similar offenses, and whether or not measurements less restrictive than confinement have frequently or recently been applied unsuccessfully . . . ." The trial court considered the presentence report and heard testimony from Defendant and the codefendant at the sentencing hearing. Afterward, because Defendant had previously violated at least one probation, has a criminal history, and was "totally untruthful" in his

testimony, the trial court concluded that Defendant was not a favorable candidate for alternative sentencing and sentenced Defendant accordingly.

The trial court also determined that the statutory presumption in favor of alternative sentencing for Defendant was rebutted by testimony from Officer Fitzgerald, whose testimony provided sufficient facts to allow the court to properly deny Defendant alternative sentencing, specifically probation, on the basis of "deterrent issues" alone. It is the duty of this Court to review the facts underlying a trial court's decisions, however the record before us regarding this specific issue is inadequate for the task. We have the transcript of the sentencing hearing, which indicates that facts given during the guilty plea proceeding, as well as testimony presented during the hearing on Defendant's suppression motion, detailed the underlying facts of this case, but a transcript of neither the plea proceeding nor the suppression hearing is contained in the appellate record. The memorandum in support of Defendant's motion to suppress refers to the testimony of Officer Fitzgerald, which suggests that he testified at the hearing. This is probably what the trial judge referred to in her ruling denying probation, but, again, review by this Court is not possible without the transcript of the proceeding. It is a defendant's responsibility to include whatever information is deemed necessary to effectuate meaningful appellate review. State v. Banes, 874 S.W.2d 73 (Tenn. Crim. App. 1993); see Tenn. R. App. P. 24. When the record is incomplete and fails to contain the documents and proceedings necessary to review an issue, this Court is precluded from considering the issue. State v. Bennett, 798 S.W.2d 783 (Tenn. Crim. App. 1990). Moreover, in the absence of an adequate record on appeal, the appellate court must presume that the trial court's rulings were correct and that the record contained sufficient factual findings to support them. State v. Oody, 823 S.W.2d 554 (Tenn. Crim. App. 1991). We are mindful that our supreme court has emphasized that "the record must contain some proof of the need for deterrence before a defendant, who is otherwise eligible for probation or other alternative sentence, may be incarcerated." State v. Hooper, 29 S.W.3d 1, 9 (Tenn. 2000). However, since the appellate record is insufficient to effectuate complete appellate review regarding this particular determination by the trial court, it is proper to presume that the trial court's rulings were correct and that the record contained sufficient factual findings to support them.

We also concur with the trial court's conclusion that Defendant's criminal history and complete lack of candor make denial of alternative sentencing proper. As the State points out in its brief, this Court has previously held that a defendant's lack of candor, credibility, and willingness to accept responsibility for his crime are relevant considerations in determining a defendant's potential for rehabilitation. State v. Zeolia, 928 S.W.2d 457, 463 (Tenn. Crim. App. 1996); State v. Dowdy, 894 S.W.2d 301, 306 (Tenn. Crim. App. 1994); State v. Anderson, 857 S.W.2d 571, 574 (Tenn. Crim. App. 1992). In a similar vein, we have also determined that it is implausible to assume that someone who has just pled guilty to a felony conviction, then offers non-credible testimony to the court and denies any criminal wrongdoing for the offense for which they have just accepted responsibility, is someone who could then immediately return to their community and be expected to assume a role as a functioning, productive, and responsible member of society. Dowdy, 894 S.W.2d at 306. Defendant's claim that incarceration is improper because he has acknowledged his mistake and learned a valuable lesson is wholly unpersuasive.

Regarding Defendant's claim that the trial court improperly denied him the favorable presumption that he is entitled to under Tenn. Code Ann. § 40-35-102(6), his brief does not state what precise facts led him to conclude that the trial court "shifted the burden of proof" to him, but his argument indicates that he has misapprehended the law concerning the burden of proof involved in this particular matter. Defendant's confusion may result from comparing the trial court's statement that Defendant was presumed to be a favorable candidate for alternative sentencing options, absent evidence to the contrary, with its statement shortly thereafter that it was the Defendant's responsibility to convince the court "why total probation would be important in their case." These two statements are not contradictory. Determining whether a defendant is entitled to an alternative sentence requires a separate inquiry from that of determining whether the defendant is entitled to full probation, and two different burdens of proof are involved. Bingham, 910 S.W.2d at 455 (Tenn. Crim. App. 1995) overruled on other grounds, State v. Hooper, 29 S.W.3d 1 (Tenn. 2000). Where a defendant is entitled to the statutory presumption of alternative sentencing, as in Defendant's case, the State has the burden of overcoming the presumption with evidence to the contrary. Id. By contrast, a defendant has the burden of establishing suitability for full probation, notwithstanding the fact that he is entitled to the statutory presumption of alternative sentencing. See Tenn.Code Ann. § 40-35-303(b). The law provides no bright-line rule for a defendant to establish suitability, but states the following: "To meet the burden of establishing suitability for full probation, the defendant must demonstrate that probation will 'subserve the ends of justice and the best interest of both the public and the defendant.'" Bingham, 910 S.W.2d at 455 (quoting State v. Dykes, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990)).

We find that Defendant failed to demonstrate that his release will serve the best interest of either the public or himself. The evidence which successfully rebutted the Defendant's favorable presumption for alternative sentencing was similarly sufficient to refute his argument that he was suitable for probation. In sum, we find no fault with the trial court's application of statutory sentencing principles or its denial of alternative sentencing or probation. Defendant is not entitled to relief on this issue.

### III. Conclusion

For the foregoing reasons, the judgment of the trial court is AFFIRMED.

_____
THOMAS T. WOODALL, JUDGE